IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EILEEN L. ZELL,                      :

                                    :         **Case No. 2:13-CV-00458**

           **Plaintiff,**        :

                                      :         **JUDGE ALGENON L. MARBLEY**

      **v.**                       :

                                      :         **Magistrate Judge Abel**

KATHERINE M. KLINGELHAFER, *et al.*,  :

                                      :

           **Defendants.**     :

## OPINION & ORDER

This matter is before the Court on the parties' cross-motions for summary judgment.
Plaintiff Eileen Zell seeks partial summary judgment on Defendants' personal jurisdiction,
service of process, and statute of limitations defenses. (Doc. 19). Defendants move for
summary judgment on the same grounds, and ask the Court, therefore, to dismiss Plaintiff's case.
(Doc. 40). For the reasons set forth herein, Plaintiff's Motion is **GRANTED IN PART AND
DENIED IN PART**; Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

### I.      BACKGROUND

This case arises out of a $90,000 promissory note between Plaintiff Zell and her nephew,
Michael Mindlin, made in December 2000. (*Compl.*, Doc. 2, ¶ 13). While planning her strategy
to collect on the note, Plaintiff engaged Defendant law firm Frost Brown Todd, LLC ("FBT") to
advise her. (*Id.*, ¶ 14). Before she could bring suit, however, Mindlin filed his own affirmative
action for declaratory relief in Franklin County, Ohio. Based on advice from FBT attorneys,
Plaintiff consented to the jurisdiction of the Ohio courts and participated in Mindlin's case.

From the pre-lawsuit planning stage through the result of her nephew's case and
subsequent appeals, Plaintiff was represented personally by a succession of FBT attorneys. At
first, Plaintiff was represented by Defendant Patricia Laub, a partner at FBT, assisted by

Defendants Shannah Morris and Douglas Bozelle, and overseen by Defendant Joseph Dehner. Attorney Laub's personal representation of Plaintiff ended on October 22, 2010, when Attorney Morris assumed primary responsibility.  On May 6, 2011, Plaintiff requested that FBT replace Attorney Morris, and Defendant Jeffrey Rupert took over, on May 10.  (*Id.*, ¶¶ 39-40).  Attorney Rupert personally represented Plaintiff from May 10, 2011 through March 28, 2012, at which time he moved to Seattle.  (*Id.*, ¶¶ 57).  During this time, Defendant Katherine Klingelhafer also worked on Plaintiff's case, drafting at least two research memoranda on July 13 and August 8, 2011, addressing the choice of law issue related to Plaintiff's note.  (*Id.*, ¶¶ 123, 125-26, 135-38, 140, 146).  After Attorney Rupert's departure, Attorney Dehner took over personal representation of Plaintiff, including representing Plaintiff on appeal, and provided his opinion on her seeking review by the Ohio Supreme Court.  (*Id.*, ¶¶ 59, 151).  Attorney Dehner's last interaction with Plaintiff as her attorney was August 13, 2012, after which he informed her that FBT was withdrawing from her case.  (*Id.*, ¶¶ 59-61).

Plaintiff ultimately lost her case against her nephew.  Judge Sheward, of the Franklin County Court of Common Pleas, found that, because she attempted to recover on her note more than six years after its execution, Plaintiff's claim was not timely under Ohio law, and the court thus entered judgment against her.  *Mindlin v. Zell*, No. 10CVH-14965 (Franklin Cnty. C.P. Oct. 12, 2011).  On appeal, the Court of Appeals for the Tenth Appellate district agreed, and further rejected Plaintiff's alternative arguments on the basis that they were not raised at the trial level, and thus could not be considered on appeal.  *Mindlin v. Zell*, No. 11AP-983 (Ohio App. Aug. 7, 2012).  The Tenth District twice denied Plaintiff's requests that it reconsider its decision. *Mindlin v. Zell*, No. 11AP-983 (Ohio App. Oct. 25, 2012); *Mindlin v. Zell*, No. 11AP-983 (Ohio App. Dec. 31, 2012).  Plaintiff opted not to seek review by the Ohio Supreme Court.

Plaintiff alleges at least two distinct acts of malpractice[1] by the attorneys at FBT related to their representation of her on the promissory note matter.  First, she argues that Defendants erroneously advised her that her note would be subject to Missouri's ten-year statute of limitations, rather than Ohio's six-year period, even if her case were adjudicated in Ohio.  (*Id.*, ¶¶ 81-82, 84).  Based on these representations, Plaintiff alleges that she rejected an offer to settle the case against her nephew for $63,000.  (*Id.*, ¶¶ 101-02, 104, 106-07).  She further agreed to submit to the jurisdiction of the Ohio court and to participate in the declaratory action filed by her nephew, with disastrous results.  (*Id.*, ¶¶ 74-76, 104, 123).  As the appellate court explained, "by choosing Ohio as the forum for pursuing her action, [Plaintiff] was subject to Ohio's statute of limitations even if her claim would be timely in Missouri."  *Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶ 15 (Ohio App. Aug. 7, 2012).

Next, Plaintiff alleges that Defendants erred when they failed to argue before the trial court any alternative or tolling arguments under Ohio law.  (*Compl.*, ¶¶ 72, 78); *see Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶¶ 17-18 ("Appellant did not, however, raise any of these [alternative] arguments [as to why the promissory note was timely under Ohio law] in the trial court.").  In its first and second reconsideration decisions, the appellate court explained that those arguments that Defendants did raise in the trial court were defective because they were "devoted to the timeliness of [Plaintiff's] action under Missouri law," not Ohio law, and furthermore because even the estoppel argument that Defendants raised in the trial court was ineffective, since the attorneys made reference to "promissory estoppel" rather than "equitable estoppel."

---

[1] In her Motion, Plaintiff lists three instances of alleged malpractice by Defendants, by separately enumerating Defendants' alleged failure to preserve the "alternative" arguments on appeal and wrongly arguing "promissory" rather than "equitable" estoppel. (Doc. 19 at 12-13). In her Reply, however, Plaintiff aggregates these two alleged failures, and cites Defendants' confidence that she still might succeed on appeal, and her consequent rejection of another settlement offer, as the third act of malpractice. (Doc. 48 at 5). In either case, the various acts numbered as the "second" and/or "third" instances of malpractice all relate to Defendants' actions on appeal.

*Mem. Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶¶ 8-9 (Ohio App. Oct. 25, 2012); *Mem. Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶9 (Ohio App. Dec. 31, 2012).  Relatedly, Plaintiff faults Defendants for their overconfidence related to the strength of these "alternative" Ohio-law-based arguments.  In an email dated January 4, 2012, before the appellate court had rendered any of its decisions, Attorney Rupert admitted that Missouri law was unlikely to apply to the note, but suggested that she might still prevail on the alternative arguments.  (*Email dated Jan. 4, 2012*, Doc. 48-1 at 18).  Based on this advice, Plaintiff alleges, she turned down another settlement offer and proceeded with her appeal.  (*Compl.*, ¶¶ 79, 148).

Plaintiff commenced this action on May 10, 2013.  (*Compl.*, Doc. 2).  Pursuant to Fed. R. Civ. P. 4(m), she had 120 days, until September 9, 2013, to serve Defendants.  Due to various complications, Plaintiff chose to employ Kirk Wilhite, a professional process server in Columbus, Ohio, in order to perfect service.  (*Pl.'s Mot. for Extension of Time*, Doc. 18 at 2-4; *Aff. of Jonathan R. Zell*, Doc. 18-4, ¶¶ 13-14, 17-19).  Plaintiff alleges that Wilhite was successful in serving process on all Defendants on or before September 9, except for Defendant Rupert, who was eventually served via certified mail on September 13.  (*Zell Aff.*, ¶¶ 23-26).

Defendants challenge Wilhite's claim that he served them, and take issue with the proofs of service filed by him.  Defendants have maintained that failure of service and/or failure of service of process bars the claims against them, and subpoenaed Wilhite to appear and testify as to his effectuation of service.  (*See Defs.' Mot. for Order to Show Cause*, Doc. 23).  Accordingly, on December 4, 2013, Plaintiff sought extra time to serve process, in order to re-serve each Defendant.  (Doc. 18).  The Court granted this request on December 26, 2013, giving Plaintiff until March 31, 2014.  (Doc. 25).  Defendants demanded reconsideration, on the grounds that the

4

Court ruled on the Motion before they had an opportunity to respond (Doc. 26), and on March 10, 2014, after the issue had been fully briefed, the Court denied Defendants' Motion.  (Doc. 61).

In its Order denying Defendants' Motion, the Court explained that Plaintiff had demonstrated good cause for an extension, because she had been reasonably diligent in attempting to perfect service within the allotted period.  (Doc. 61 at 5-6).  The Court assessed the relevant factors and found no prejudice to Defendants, other than having to defend this action, especially in light of the fact that they had actual notice and were able timely to file their Answer and Counterclaim.  (*Id.* at 6).  The Court also noted that Plaintiff made "more than . . . a half-hearted attempted at service," considering that she hired a process server, and that nothing suggested that she played any part in the alleged misconduct by Wilhite.  (*Id.* at 7).

In their Answer, Defendants contest service of process, and raise the affirmative defenses of, *inter alia*, lack of personal jurisdiction, failure of service, and the statute of limitations.  On December 4, 2013, before the Court had occasion to rule on her request for an extension of time to serve process, Plaintiff moved for summary judgment in her favor on these three affirmative defenses.  (Doc. 19).  Defendants oppose, and themselves move for summary judgment in their favor on the same issues.  (Doc. 40).  The matter has been fully briefed, and, particularly in light of the Court's Order granting an extension of time to serve process, is ripe for review.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law."  *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

247-48, (1986)).  The nonmoving party must then present "significant probative evidence" to

show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v.*

*Philip Morris Cos., Inc.,* 8 F.3d 335, 339-40 (6th Cir. 1993).  The suggestion of a mere

possibility of a factual dispute is insufficient to defeat a motion for summary judgment.  *See*

*Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley*

*Co.,* 801 F.2d 859, 863 (6th Cir. 1986)).  Summary judgment is inappropriate, however, "if the

dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'"  *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting

*Anderson,* 477 U.S. at 251-52).  In evaluating such a motion, the evidence must be viewed in the

light most favorable to the nonmoving party.  *United States S.E.C. v. Sierra Brokerage Servs.,*

*Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).  The mere existence of a scintilla of evidence in support

of the opposing party's position will be insufficient to survive the motion; there must be evidence

on which the jury could reasonably find for the opposing party.  *See Anderson,* 477 U.S. at 251;

*Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995).

The standard of review for cross-motions for summary judgment "does not differ from

the standard applied when a motion is filed by only one party to the litigation."  *Sierra*

*Brokerage Servs.*, 712 F.3d at 327.

### III.    ANALYSIS

Plaintiff seeks summary judgment on Paragraphs 2, 3, and 4 of the "Affirmative

Defenses" enumerated in Defendants' Answer:  (2) Plaintiff's claims are barred by the failure of

service and/or failure of service of process; (3) the Court lacks personal jurisdiction over

Defendants, due to Plaintiff's failure of service and/or failure of service of process; and (4)

Plaintiff's claims are barred by the applicable statute of limitations. (*Pl.'s Mot. for Summ. J.*,

Doc. 19 at 1). Defendants similarly assert that summary judgment is appropriate because

"Plaintiff did not perfect service within 120 days," and because "Plaintiff's claims are barred by

the applicable statute of limitations." (*Defs.' Mot. for Summ. J.*, Doc. 40 at 1).

### A.     Service of Process

Defendants argue that, because they were never properly served, the Court does not have

jurisdiction over them, and the case against them must be dismissed. They note that personal

jurisdiction is "a composite of two separate ideas:  amenability to jurisdiction . . . and notice to

the defendant through valid service of process. FBT contests the latter." (Doc. 40 at 4) (internal

quotations and citations omitted). Defendants explain that they have contested service since the

inception of this case, and argue that they have not waived this defense, by appearing in order to

challenge it or by filing an Answer and Counterclaim. (*Id.* at 5-6).

The Court need not decide the issue of waiver, however, because it has already addressed

the issue of service in this case. Defendants do not dispute the Court's jurisdiction over them

apart from the alleged failure of service. And no party disputes that Defendants were properly

served at least by April 10, 2014, when the Court issued its final ruling on Plaintiff's Motion for

additional time to effect service of process. But as the Court made clear in that Order, Plaintiff

acted reasonably and diligently in attempting to effect service, and there was good cause to

extend time for serving Defendants. (Doc. 61 at 5-6). Accordingly, the Court granted Plaintiff's

Motion and denied Defendants' Motion for Reconsideration. (*Id.* at 7). Defendants have thus

been timely served, and summary judgment for Plaintiff on this issue is appropriate.

## B.    Statute of Limitations

The more pressing issue for this Court is whether Plaintiff's bad luck with meeting filing deadlines has followed her from the underlying case into this action as well.  Defendants argue that Plaintiff has missed the one-year statute of limitations applicable to attorney malpractice claims in Ohio, because she filed this case more than one year after either:  (a) the "cognizable event" that put her on notice of the alleged malpractice; or (b) the termination of her representation by FBT.  Critically, Defendants argue, as to the first point, that the "cognizable event" was the day the trial court granted summary judgment—October 12, 2011—and, as to the second, that the one-year time period must be measured as against each individual attorney that worked on Plaintiff's case.  Because every attorney except for Defendant Dehner terminated their representation of Plaintiff more than one year before she filed suit, and because, Defendants argue, Dehner "did [not do] anything wrong," Plaintiff cannot maintain an action against any individual attorney, and thus cannot maintain a claim against FBT itself, and her case must be dismissed.  For Defendants, the fact that FBT, the firm, continued to represent Plaintiff throughout the entire promissory note litigation has no relevance, since, they argue, Ohio courts have made clear that "[e]ach attorney's individual liability must be analyzed in light of the statute of limitations for each particular attorney."  (Doc. 40 at 11).

Under O.R.C. § 2305.11(A), a claim for legal malpractice or professional negligence must be brought within "one year after the cause of action accrued."  The cause of action accrues, and the limitations period begins to run:  "[a] when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney[;] or [b] when the attorney-client relationship for that particular transaction or

8

undertaking terminates, whichever occurs later." *Smith v. Conley*, 846 N.E.2d 509, 511-12 (Ohio 2006) (quotation omitted).

Furthermore, under Ohio law, it is clear that "[a] law firm does not engage in the practice of law and therefore cannot directly commit legal malpractice"; rather, a law firm "may be vicariously liable," if "one or more of its principals or associates are liable for legal malpractice." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 913 N.E.2d 939, 940 (Ohio 2009).

### 1.  Cognizable event

A cognizable event occurs, and a claim for legal malpractice accrues, when a client "should . . . have known that he or she may have an injury caused by his or her attorney." *Conley*, 846 N.E.2d at 512.  In assessing the accrual date, the Ohio Supreme Court has explained that the trial court must "explore the particular facts of the action and make the following determinations:"

> when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury.

*Omni-Food & Fashion, Inc. v. Smith*, 528 N.E.2d 941, 944-45 (Ohio 1988).  In particular, the focus of the inquiry "should be on the point of discovery, that is, awareness, that the client discovered or should have discovered that he has been injured by the attorney's act or omission." *Smith v. Barclay*, No. 11AP-798, 2012-Ohio-5086, ¶ 24 (Ohio App. Nov. 1, 2012) (quotation omitted), *appeal not allowed*, 984 N.E.2d 1101 (Ohio 2013).

Under Ohio law, the Court must concentrate on "what the client was aware of and not an extrinsic judicial determination." *Id.*  Indeed, the Ohio Supreme Court has cautioned against

9

"[a]dopting a rule of law that a client is entitled to exhaust all appellate remedies before the

statute of limitations commences," and has declared that it is reasonable to expect a client to file

a legal malpractice lawsuit even while the underlying litigation is still pending, if necessary.

*Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, 401-02 (Ohio 1989); *see also Jackson v.*

*Greger*, No. 23571, 2010-Ohio-3242, ¶ 25 (Ohio App. July 9, 2010).

Given this precedent, the Court must conclude that the "cognizable event" for Plaintiff's

first instance of malpractice occurred when the trial court granted summary judgment against

Plaintiff, on October 12, 2011.  Because Plaintiff filed suit in this case on May 10, 2013, any

claim based on the first alleged instance of malpractice is untimely, unless that Defendant's

termination of representation of Plaintiff occurred no more than one year before the filing date.

With regard to the second articulated basis, however—that is, Defendants' various

alleged errors related to the arguments raised (or not raised) in the trial court, and thus not

preserved on appeal, including their failure to argue alternative bases for timeliness under Ohio

law, and their appeal to "promissory" rather than "equitable" estoppel—the cognizable event

cannot be October 12, 2011, since Plaintiff could not have been aware that her attorneys

committed these new errors until she was put on notice by the adverse rulings of the Tenth

District Court of Appeals.  At the earliest, then, the cognizable event with relation to these

alleged acts of malpractice is August 7, 2012, the first adverse ruling by the Tenth District. *See*

*Decision*, *Mindlin v. Zell*, No. 11AP-983 (Ohio App. Aug. 7, 2012).  Because Plaintiff filed suit

within one year of this date, any claim based on these alleged failures is timely.

Plaintiff does not assert that Defendants Laub, Bozell, or Morris participated in the

alleged malpractice that took place in the trial court and on appeal, and thus they had no part in

the fatal summary judgment decision or Defendants' alleged failure to raise alternative

10

arguments for timeliness or based on estoppel.  Accordingly, and because they ceased to

represent Plaintiff more than one year before she filed suit (*see infra*, Part. III.B.2), Plaintiff's

Motion is **DENIED** and Defendants' Motion is **GRANTED** with respect to these attorneys, and

they are dismissed from this case.

Plaintiff does, however, maintain that Defendants Klingelhafer, Rupert, and Dehner

played a part in the alleged malpractice that took place in the trial court.  With respect to these

Defendants, therefore, Plaintiff's Motion is **GRANTED** and Defendants' Motion is **DENIED**.

### 2.  *Termination of attorney-client relationship*

Generally, the determination of whether an attorney-client relationship has ended is a

factual question to be resolved by the trier of fact.  *Omni-Food & Fashion*, 528 N.E.2d at 944.

But, when the actions terminating the relationship are clear and unambiguous, such that

reasonable minds can come to but one conclusion from the evidence, the termination of the

attorney-client relationship may be decided as a matter of law.  *Koerber v. Levey & Gruhin*, No.

21730, 2004-Ohio-3085, ¶ 19 (Ohio App. June 16, 2004).

As explained above, under Ohio law, "[a] law firm does not engage in the practice of law

and therefore cannot directly commit legal malpractice."  *Wuerth*, 913 N.E.2d at 940.  Instead,

the Court must look to whether each attorney, individually, is liable.  *Id.*  As a corollary of this

principle, "continuing representation of a client by a firm acting through several successive

individual attorneys cannot extend the time to sue for alleged malpractice by any one of those

individual attorneys*."  Fisk v. Rauser & Assoc. Legal Clinic Co.*, No. 10AP-427, 2011-Ohio-

5465, ¶ 19 (Ohio App. Oct. 25, 2011).  Plaintiff must press her case "against [each] individual

before proceeding to establish vicarious liability on the part of an employer or firm."  *Id.*

Here, as in *Fisk*, each attorney that represented Plaintiff terminated his or her

representation, and did no further work on the promissory note matter, more than one year before

11

Plaintiff filed this action, except for Defendant Dehner.  Defendant Laub terminated her work on

the case on October 22, 2010 (*Compl.*, ¶ 93); Defendant Bozell, on February 4, 2009 (*id.*, ¶ 84);

Defendant Morris, on May10, 2011 (*id.*, ¶¶ 40, 42); Defendant Klingelhafer, on January 4, 2012

(*id.*, ¶¶ 123, 125-26, 135, 137-38, 140, 146); and Defendant Rupert, on March 28, 2012 (*id.*, ¶

57).  Accordingly, with respect to these Defendants, Plaintiff's claims are untimely unless they

were commenced within one year of the "cognizable event" leading her to discover her injury.

(*see supra*, Part III.B.1.).

Defendant Dehner continued to represent Plaintiff through her appeals process, including

at least through August 10, 2012.  (*Id.*, ¶ 59).  Defendants argue Dehner escapes, as well, since

Plaintiff "does not allege that Attorney Dehner did anything wrong."  (Doc. 40 at 19).  But this

assertion belies the extensive allegations made against Defendant Dehner throughout Plaintiff's

Complaint.  Plaintiff insists that Dehner "was involved in the entire course of the litigation as the

attorney who supervised and oversaw the entire case."  (Doc. 48 at 12; *Compl.*, ¶¶ 41, 57).  She

maintains that Dehner submitted the bills in Plaintiff's case (*Compl.*, ¶ 149); that he approved of

new attorneys to be assigned to the matter (*id.*, ¶ 150); that he asked her to delay negotiations

over the alleged malpractice during the pendency of the appeals in her underlying case (Doc. 48-

1 at 11-12); and that he erroneously argued, both to Plaintiff and the Tenth District, that she

would still prevail, based on the "alternative" Ohio law arguments, including "promissory" rather

than "equitable" estoppel (*Compl.*, ¶¶ 59, 72).

At the very least, Plaintiff has raised a disputed issue of material fact as to Dehner's

actions, sufficient to survive summary judgment.  Accordingly, because Dehner terminated his

representation of Plaintiff less than one year before Plaintiff filed this suit, her claims against

him, insofar as he participated in any and all aspect of Plaintiff's case, are timely.

## IV.    CONCLUSION

For the reasons states above, Defendants' Motion for Partial Summary Judgment (Doc. 19) is **GRANTED IN PART AND DENIED IN PART**; Defendants' Motion for Summary Judgment (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**.

Plaintiff's claims against Defendants Laub, Bozell, and Morris are **DISMISSED**. Plaintiff's claims against Defendants Klingelhafer, Rupert, Dehner, and FBT shall proceed, and summary judgment is granted in her favor as Defendants' affirmative defenses of lack of personal jurisdiction, failure of service, and the statute of limitations.

**IT IS SO ORDERED.**

                               **s/ Algenon L. Marbley**
                               **ALGENON L. MARBLEY**
                               **UNITED STATES DISTRICT JUDGE**

**DATED:  September 12, 2014**