IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EILEEN L. ZELL, | : | |
| | : | Case No. 2:13-CV-00458 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Abel |
| KATHERINE M. KLINGELHAFER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court on Third Party Defendant Jonathan Zell's Motion for Summary Judgment, (Doc. 50). Third Party Defendant Jonathan Zell ("Mr. Zell") seeks summary judgment on Defendants' Third Party Complaint, (Doc. 7), alleging that the Defendants are entitled to contribution and/or indemnification from Mr. Zell. For the reasons set forth herein, Third Party Defendant Jonathan Zell's Motion is **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

1. *Plaintiff Eileen Zell's Action Against Defendants*

This case arises out of a $90,000 promissory note between Plaintiff Zell and her nephew, Michael Mindlin, made in December 2000 (the "underlying action"). (*Compl.*, Doc. 2 at ¶ 13). While planning her strategy to collect on the note, Plaintiff engaged Defendant law firm Frost Brown Todd, LLC ("FBT") to advise her. (*Id.* at ¶ 14). Before she could bring suit, however, Mindlin filed his own affirmative action for declaratory relief in Franklin County, Ohio. Based on advice from FBT attorneys, Plaintiff consented to the jurisdiction of the Ohio courts and participated in Mindlin's case.

From the pre-lawsuit planning stage, through the result of her nephew's case and subsequent appeals, Plaintiff was represented personally by a succession of FBT attorneys. At first, Plaintiff was represented by Defendant Patricia Laub, a partner at FBT, assisted by Defendants Shannah Morris and Douglas Bozelle, and overseen by Defendant Joseph Dehner. Attorney Laub's personal representation of Plaintiff ended on October 22, 2010, when Attorney Morris assumed primary responsibility. On May 6, 2011, Plaintiff requested that FBT replace Attorney Morris, and Defendant Jeffrey Rupert took over, on May 10. (*Id.* at ¶¶ 39-40). Attorney Rupert personally represented Plaintiff from May 10, 2011 through March 28, 2012, at which time he moved to Seattle. (*Id.* at ¶ 57). During this time, Defendant Katherine Klingelhafer also worked on Plaintiff's case, drafting at least two research memoranda on July 13 and August 8, 2011, addressing the choice of law issue related to Plaintiff's note. (*Id.* at ¶¶ 123, 125-26, 135-38, 140, 146). After Attorney Rupert's departure, Attorney Dehner took over personal representation of Plaintiff, including representing Plaintiff on appeal, and provided his opinion on her seeking review by the Ohio Supreme Court. (*Id.* at ¶¶ 59, 151). Attorney Dehner's last interaction with Plaintiff as her attorney was August 13, 2012, after which he informed her that FBT was withdrawing from her case. (*Id.* at ¶¶ 59-61).

Plaintiff ultimately lost her case against her nephew. Judge Sheward, of the Franklin County Court of Common Pleas, found that, because she attempted to recover on her note more than six years after its execution, Plaintiff's claim was not timely under Ohio law, and the court thus entered judgment against her. *Mindlin v. Zell*, No. 10CVH-14965 (Franklin Cnty. C.P. Oct. 12, 2011). On appeal, the Court of Appeals for the Tenth Appellate district agreed, and further rejected Plaintiff's alternative arguments on the basis that they were not raised at the trial level, and thus could not be considered on appeal. *Mindlin v. Zell*, No. 11AP-983 (Ohio App. Aug. 7,

2012). The Tenth District twice denied Plaintiff's requests that it reconsider its decision. *Mindlin v. Zell*, No. 11AP-983 (Ohio App. Oct. 25, 2012); *Mindlin v. Zell*, No. 11AP-983 (Ohio App. Dec. 31, 2012). Plaintiff opted not to seek review by the Ohio Supreme Court.

Plaintiff alleges at least two distinct acts of malpractice[1] by the attorneys at FBT related to their representation of her on the promissory note matter. First, she argues that Defendants erroneously advised her that her note would be subject to Missouri's ten-year statute of limitations, rather than Ohio's six-year period, even if her case were adjudicated in Ohio. (*Id.* at ¶¶ 81-82, 84). Based on these representations, Plaintiff alleges that she rejected an offer to settle the case against her nephew for $63,000. (*Id.* at ¶¶ 101-02, 104, 106-07). She further agreed to submit to the jurisdiction of the Ohio court and to participate in the declaratory action filed by her nephew, with disastrous results. (*Id.* at ¶¶ 74-76, 104, 123). As the appellate court explained, "by choosing Ohio as the forum for pursuing her action, [Plaintiff] was subject to Ohio's statute of limitations even if her claim would be timely in Missouri." *Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶ 15 (Ohio App. Aug. 7, 2012).

Next, Plaintiff alleges that Defendants erred when they failed to argue before the trial court any alternative or tolling arguments under Ohio law. (*Compl.* At ¶¶ 72, 78); *see Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶¶ 17-18 ("Appellant did not, however, raise any of these [alternative] arguments [as to why the promissory note was timely under Ohio law] in the trial court."). In its first and second reconsideration decisions, the appellate court explained that those arguments that Defendants did raise in the trial court were defective because they were "devoted

---

[1] In her Motion, Plaintiff lists three instances of alleged malpractice by Defendants, by separately enumerating Defendants' alleged failure to preserve the "alternative" arguments on appeal and wrongly arguing "promissory" rather than "equitable" estoppel. (Doc. 19 at 12-13). In her Reply, however, Plaintiff aggregates these two alleged failures, and cites Defendants' confidence that she still might succeed on appeal, and her consequent rejection of another settlement offer, as the third act of malpractice. (Doc. 48 at 5). In either case, the various acts numbered as the "second" and/or "third" instances of malpractice all relate to Defendants' actions on appeal.

to the timeliness of [Plaintiff's] action under Missouri law," not Ohio law, and furthermore because even the estoppel argument that Defendants raised in the trial court was ineffective, since the attorneys made reference to "promissory estoppel" rather than "equitable estoppel." *Mem. Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶¶ 8-9 (Ohio App. Oct. 25, 2012); *Mem. Decision*, *Mindlin v. Zell*, No. 11AP-983, ¶9 (Ohio App. Dec. 31, 2012).  Relatedly, Plaintiff faults Defendants for their overconfidence related to the strength of these "alternative" Ohio-law-based arguments.  In an email dated January 4, 2012, before the appellate court had rendered any of its decisions, Attorney Rupert admitted that Missouri law was unlikely to apply to the note, but suggested that she might still prevail on the alternative arguments.  (*Email dated Jan. 4, 2012*, Doc. 48-1 at 18).  Based on this advice, Plaintiff alleges, she turned down another settlement offer and proceeded with her appeal.  (*Compl.* at ¶¶ 79, 148).

                2. *Third Party Defendant Mr. Zell's Involvement in the Underlying Action*

Mr. Zell, Plaintiff's son, has served as her "personal attorney" since January 1, 2001. (*Aff. of Eileen Zell*, Doc. 50-1 at ¶ 4; *Aff. of Jonathan R. Zell*, Doc. 50-2 at ¶ 5).  According to Plaintiff, Mr. Zell's role generally was to oversee the work of outside counsel and advise her about matters as necessary.  (Doc. 50-1 at ¶ 4).  Plaintiff asserts that Mr. Zell has served as a "conduit" between herself and outside counsel when she has hired outside counsel for matters related to the loan.  (*Id*. at ¶ 7).

Specifically, as related to the $90,000 loan at issue, Mr. Zell assisted Plaintiff by: advising her to seek outside counsel to prepare a refinancing agreement for the $90,000 loan when the statute of limitations was approaching; selecting FBT, the law firm employing the Defendants in this case, as the firm tasked creating a refinancing loan document and representing Plaintiff in the litigation related to the underlying action; assisting Plaintiff in communicating

with the borrower by "consult[ing]" with FBT and "continu[ing] to give [Plaintiff] extensive advice" regarding the loan; and generally assisting FBT in preparation of Plaintiff's case. (*Id*. at ¶ 4-9; Doc. 50-2 at ¶ 5-11).  Mr. Zell also requested to conduct all settlement negotiations related to the $90,000 loan, and indicated to FBT his mother's approval of his request. (Doc. 64-5). Mr. Zell further states that he suggested trial strategy to the FBT attorneys, drafted documents or portions of documents for filing, and was listed on court filings in Plaintiff's state court case as "of counsel." (Doc. 50-2 at ¶ 5-11; Doc. 64 at 4). Neither Mr. Zell nor Defendants have presented to the Court evidence of a formal agreement memorializing the terms of the relationship between Mr. Zell and the Defendants.

## B. Procedural Background

Plaintiff commenced this action on May 10, 2013. (*Compl.*, Doc. 2). Pursuant to Fed. R. Civ. P. 4(m), she had 120 days, until September 9, 2013, to serve Defendants. Due to various complications, Plaintiff chose to employ Kirk Wilhite, a professional process server in Columbus, Ohio, to perfect service. (*Pl.'s Mot. for Extension of Time*, Doc. 18 at 2-4; *Aff. of Jonathan R. Zell*, Doc. 18-4 at ¶¶ 13-14, 17-19). Plaintiff alleges that Wilhite was successful in serving process on all Defendants on or before September 9, 2013 except for Defendant Rupert, who was eventually served via certified mail on September 13, 2013. (Doc. 18-4 at ¶¶ 23-26).

Defendants challenge Wilhite's claim that he served them, and take issue with the proofs of service filed by him. Defendants have maintained that failure of service and/or failure of service of process bars the claims against them, and subpoenaed Wilhite to appear and testify as to his effectuation of service. (*See Defs.' Mot. for Order to Show Cause*, Doc. 23). Accordingly, on December 4, 2013, Plaintiff sought extra time to serve process, in order to re-serve each Defendant. (Doc. 18). The Court granted this request on December 26, 2013, giving Plaintiff

5

until March 31, 2014. (Doc. 25). Defendants demanded reconsideration, on the grounds that the Court ruled on the Motion before they had an opportunity to respond (Doc. 26), and on March 10, 2014, after the issue had been fully briefed, the Court denied Defendants' Motion. (Opinion and Order, Doc. 61).

In its Order denying Defendants' Motion, the Court explained that Plaintiff had demonstrated good cause for an extension because she had been reasonably diligent in attempting to perfect service within the allotted period. (Doc. 61 at 5-6). The Court assessed the relevant factors and found no prejudice to Defendants, other than having to defend this action, especially in light of the fact that they had actual notice and were able timely to file their Answer and Counterclaim. (*Id.* at 6). The Court also noted that Plaintiff made "more than . . . a half-hearted attempted at service," considering that she hired a process server, and that nothing suggested that she played any part in the alleged misconduct by Wilhite. (*Id.* at 7).

On December 4, 2013, Plaintiff filed a motion seeking partial summary judgment on Defendants' personal jurisdiction, service of process, and statute of limitations affirmative defenses. (Doc. 19). On January 21, 2014, Defendants opposed Plaintiffs motion, (Doc. 41), and also filed a cross-motion for summary judgment on the same issues, requesting the Court to dismiss Plaintiff's case. (Doc. 40). The Court granted in part and denied in part Plaintiff's motion, and, likewise, granted in part and denied in part Defendants' motion. (*Opinion and Order*, Doc. 89). In its Opinion and Order, the Court dismissed Plaintiff's claims against Defendants Laub, Bozell, and Morris. Plaintiff's claims against Defendants Klingelhafer, Rupert, Dehner, and FGT were allowed to proceed, and summary judgment was granted in Plaintiff's favor on three of Defendants' affirmative defenses – lack of personal jurisdiction, failure of service, and the statute of limitations.

6

On September 24, 2013, Defendants filed a joint Answer and Third Party Complaint, (Doc. 7), bringing a third party action against Mr. Zell, Plaintiff's son. Mr. Zell filed a Motion for Summary Judgment, (Doc. 50), moving this Court to dismiss Defendants' third party complaint with prejudice. Defendants responded, (Doc. 60), and Mr. Zell has replied (Doc. 64); therefore, this matter is ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts, however. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir.1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989), and to

7

designate specific facts that are in dispute.  *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404–05.

To survive the motion the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339-40 (6th Cir. 1993).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party.  *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995); *see also Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992) (finding that the suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986)).

### III.    ANALYSIS

Third-party Defendant Jonathan Zell ("Mr. Zell") seeks summary judgment, requesting that this Court dismiss with prejudice Defendants' third party complaint, (Doc. 7), against him.  (Doc. 50 at 1).  Defendants' third party complaint alleges that Mr. Zell served as co-counsel on Plaintiff's underlying case and, thus, to the extent Plaintiff suffered damages from Defendants' negligence, she likewise suffered damages because of Mr. Zell's negligence. (Doc. 7 at ¶ 3-5).  For that reason, Defendants claim that if they are found liable for negligence they are entitled to contribution from Mr. Zell.  (*Id*. at ¶ 6).  Defendants also maintain that they are entitled to indemnification from Mr. Zell "based on his active and direct negligence." (*Id*. at ¶ 7).

Mr. Zell argues that "[t]he FBT Defendants not have even alleged any specific acts of negligence" by him and that his status as an attorney in the underlying action, without more, does not prove he contributed to or caused the professional negligence alleged by Plaintiff.  (*See* Doc.

8

50 at 9; Doc. 64 at 8). Mr. Zell puts forth evidence to support the claim that "the FBT Defendants were the only ones who negligently advised the Plaintiff" regarding the applicable statute of limitations in Plaintiff's underlying action, one of Plaintiff's main malpractice claims against Defendants.[2] (Doc. 50 at 8-9; Doc. 64 at 11-13). Further, on Defendants' contribution claim, Mr. Zell argues that Defendants do not allege that he did any poor work, let alone that he contributed to Plaintiff's injury. (Doc. 64 at 8). With respect to Defendants' indemnification claim, Mr. Zell maintains that Defendants fail to present evidence of any indemnification agreement between himself and any individual Defendants or the law firm (FBT). Mr. Zell offers affidavit testimony to support his argument that no such express or implied indemnification agreement exists. (Doc. 50-2 at ¶ 12-14).

Defendants focus their argument on demonstrating that Mr. Zell actively participated in and was intimately involved in Plaintiff's underlying case as counsel. Thus, Defendants conclude, Mr. Zell is "subject to a third party claim for contribution/indemnification." (Doc. 60 at 2, 10). With respect to their claim for contribution, Defendants insist that "FBT has a viable contribution claim against Zell based on his concurrent representation of Plaintiff." (*Id.* at 11). Similarly, Defendants argue that Mr. Zell's participation in the underlying action yields the conclusion that Defendants are entitled to indemnification from Mr. Zell. "If there is liability," Defendants maintain, "it should be placed solely on the actions of Zell and not FBT." (*Id.* at 12). For these reasons, Defendants claim genuine issues of material fact exist, making summary judgment on their third party complaint inappropriate. (*Id*. at 12).

---

[2] On the statute of limitations issue, Mr. Zell presents evidence of correspondence between himself and the Defendants in which he questions Defendants' statute of limitations analysis and expresses doubt as to whether Defendants properly considered the issue. (*See* Doc. 64 at 11-13). Moreover, Mr. Zell presents correspondence indicating that Plaintiff's decision to move forward with the underlying case in Ohio under the belief that the Missouri statute of limitations would apply was based on a review of Defendants' recommendation and reasoning, as opposed to any independent research or investigation conducted by Plaintiff or by Mr. Zell. (*See* Doc. 64 at 13 (Mr. Zell quoting his own email to Defendants stating, "my mother and I have decided to go along with your initial advice to try the Mindlin action in Ohio!")).

9

## A.     Contribution

Under Ohio law, a claim for contribution is governed by statute. Ohio Rev. Code § 2307.25; *see also Costin v. Wick*, 1996 WL 27974, at *2 (Ohio Ct. App. Jan. 24, 1996). Ohio Revised Code § 2307.25(A) provides that the right to contribution may exist "if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property." In other words, if two or more persons are concurrently liable or jointly liable in tort for a common injury, a right of contribution exists among them. *See Costin*, 1996 WL 27974 at *3. "Concurrent negligence" has been defined in Ohio law as "the negligence of two or more people concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury." *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 394 (1995); *see also Costin* 1996 WL 27974 at *2 (finding that if both attorneys were negligent, and their negligence combined to plaintiffs' single and indivisible injury, then they were concurrent tortfeasors and Ohio's contribution statute was applicable).

In this case, for their contribution claim to withstand summary judgment, Defendants must show genuine issues of material fact exist as to whether Mr. Zell was negligent (i.e., engaged in legal malpractice) and that his negligence concurred with Defendants' negligence to produce a single, indivisible injury to Plaintiff. A legal malpractice action arises out of an attorney's breach of the duty to "represent his client in a professional, effective and careful manner." *Costin*, 1996 WL 27974 at *3 (quoting *Loveman v. Hamilton*, 66 Ohio St.2d 183, 184 (1981)). To succeed on a legal malpractice claim, three essential elements must be shown: (1) the existence of an attorney-client relationship such that the attorney owed a duty to the plaintiff; (2) breach of the attorney's duty by not conforming to the standard required by law; and (3) a causal connection between the conduct complained of and resulting damage or loss. *See, e.g.*,

*Stancik v. Hersch*, 2012 WL 1567213, at \*5 (Ohio Ct. App. May 3, 2012) (citing *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164, 1169 (1997)).

Mr. Zell has discharged his summary judgment burden of "pointing out ... an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and by putting forth record evidence supporting his position that Defendants do not have viable claims for either contribution or indemnification against him.  *See* Fed. R. Civ. P. 56.  Defendants, on the other hand, fail to carry their burden to present significant and probative evidence in support of their allegations made in their complaint.  *See Anderson*, 477 U.S. at 249–50; *see also Celotex Corp.*, 477 U.S. 317 at 324 (stating that Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and offer admissible evidence supporting its position and "designat[ing] specific facts showing that there is a genuine issue for trial.") (quoting Fed. R. Civ. P. 56.).

Defendants focus their brief almost entirely on whether Mr. Zell was an attorney in the underlying action.  Following an extensive discussion of the legal work provided by Mr. Zell and his general role in the underlying action, Defendants then abruptly conclude: "FBT has a viable contribution claim against Zell based on his concurrent representation of Plaintiff" and so "[i]f FBT is liable, so, too, is Zell."  (Doc. 60 at 11).  Evidence about Mr. Zell's role as co-counsel, however, only relates to the first element of malpractice – whether an attorney-client relationship giving rise to a duty exists.[3]  Defendants have not presented to the Court any evidence of a breach of duty by Mr. Zell.  Likewise, Defendants make no allegations of, nor present any probative evidence concerning, damages proximately caused by Mr. Zell's conduct in connection with the malpractice alleged by Plaintiff.  *See Carolina Cas. Ins. Co. v. Sharp*, 940 F. Supp. 2d

---

[3] Moreover, Mr. Zell concedes in his Reply that he was one of Plaintiff's attorneys.  (Doc. 64 at 2).  For that reason, the question of whether an attorney-client relationship existed between Plaintiff and Mr. Zell is an undisputed fact.

569, 580 (N.D. Ohio 2013) (while the proximate cause determination is ordinarily an issue to be determined by the trier of fact, "where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury [to decide], and, as a matter of law, judgment must be given.")  (quoting *Wesley v. Walraven,* 2013 WL 544053, at *12 (Ohio Ct. App., Feb. 5, 2013).

Defendants' argument is based on the faulty reasoning that concurrent representation of a client necessarily equals third party liability.  Defendants' argument misstates Ohio law.  To the contrary, as Mr. Zell aptly points out, negligence is not a status offense.  Indeed, as indicated in *Costin*, and as Defendants themselves acknowledge, (*see* Doc. 60 at 11), a claim for contribution may stand if a concurrent attorney *causes or contributes* to a single, indivisible injury, not as an automatic consequence of concurrent representation.  *See Costin*, 1996 WL 27974 at *2-3.  A recitation of Mr. Zell's activities and participation in the underlying matter is not evidence of breach of duty, nor is it evidence of causation connecting those activities and Plaintiff's injury.

Even when viewing the evidence in the light most favorable to the Defendants, Defendants' failure to allege or present affirmative evidence of specific facts demonstrating a dispute over whether Mr. Zell's actions contributed to or caused Plaintiff's injury is fatal to Defendants' claims against Mr. Zell.  Accordingly, Defendants have not met their burden of presenting "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore*, 8 F.3d at 339-40; *see also Capital City Energy Grp., Inc. v. Kelley Drye & Warren, LLP*, 975 F. Supp. 2d 842, 851-52 (S.D. Ohio 2013) (finding that to succeed in an action for legal malpractice, all three essential elements of the claim must be satisfied); *Celotex Corp.*, 477 U.S. 317 at 324 (nonmoving party must put forth probative

evidence demonstrating genuine issues of material fact exist). Thus, no genuine issues of material fact exist for the trier of fact. Mr. Zell's motion for summary judgment must be granted.

For these reasons, Mr. Zell's Motion for Summary Judgment on Defendants' contribution claim is **GRANTED**.

### B. Indemnity

In Ohio, the rule of indemnity provides that, where a person is chargeable with another person's wrongful acts and pays damages to the injured party as a result thereof, he has a right of indemnity from the person who committed the wrongful act. *Mills v. River Terminal Railway Co.*, 276 F.3d 222, 226 (6th Cir. 2002) (citing *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St. 2d 11, 321 N.E.2d 787, 789 (Ohio 1975)); *Bank One, N.A. v. Echo Acceptance Corp.*, 522 F. Supp. 2d 959, 982 (S.D. Ohio 2007) *aff'd*, 380 F. App'x 513 (6th Cir. 2010).[4] A right of indemnity exists when "the party paying the damages [is] only secondarily liable; whereas the person committing the wrongful act is primarily liable." *Id.*; *see also Satterfield v. St. Elizabeth Health Ctr.*, 159 Ohio App. 3d 616, 620 (Ohio Ct. App. 2005).

Otherwise stated, a claim for indemnification occurs "when one who is primarily liable is required to reimburse another who has discharged a liability for which that other is only secondarily liable." *Bank One, N.A.*, 522 F. Supp. 2d at 982 (citing *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 66 Ohio St. 3d 75, 609 N.E. 2d 152, 154 (Ohio 1993)); *see also Mills*, 276 F.3d at 226 ("Indemnity may lie in favor of a party who was not actively negligent but is nonetheless made liable under the law.") (citing *Albers v. Great Cent. Transp. Corp.*, 145 Ohio St. 129, 60 N.E.2d 669, 671 (Ohio1945) (stating that a case of primary and secondary liability arises where a person "by reason of his relationship to the wrongdoer or by operation of the law," is made liable)). In

---

[4] In *Motorists Mutual*, 653 N.E.2d at 238, the Ohio Supreme Court overruled the *Travelers Indem. Co.* decision in part. The principle that an implied indemnity claim exists between parties who are primarily and secondarily liable was not the basis for that disapproval.

other words, to acquire a right to indemnification, a co-defendant must be at fault for causing Plaintiff's injuries. *Satterfield*, 159 Ohio App. 3d at 620 ("Without fault, there is no basis for indemnification. This is so because one party must be chargeable for the wrongful act of another as a prerequisite for indemnity.") (internal quotations and citations omitted).

The right to indemnity arises from a contractual relationship, either express or implied. *See Yank v. Howard Hanna Real Estate Servs.*, 2003 WL 21500191 at *3 ("The right to indemnity requires an allegation of some implied or express contract creating a duty by one party to indemnify the other.") (citing *Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 623 N.E.2d 30 (1993)); *see also Waverly City Dist. Bd. of Edn. v. Trade Architects, Inc.*, 2008 WL 5423269 (Ohio Ct. App. 2008). To allege a claim for express indemnity, the party making such an allegation must demonstrate proof of an express contractual agreement wherein the parties have agreed to indemnify one another. *See Yank*, 2003 WL 21500191 at *3. An implied contract of indemnity may be found when the tortfeasor committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other. *See Motorists Mut. Ins. Co.*, 73 Ohio St.3d at 394 (1995) (quoting *Reynolds*, 68 Ohio St.3d at 16, 623 N.E.2d 30 (1993)); *Yank*, 2003 WL 21500191 at *3 ("[I]ndemnity may be defined as the right, arising out of an implied contract, of a person who has been compelled to pay what another should pay, to obtain complete reimbursement.") (quoting *Allstate Ins. Co. v. U.S. Associates Realty, Inc.*, 11 Ohio App. 3d 242, 464 N.E.2d 169, 173 (Ohio Ct. App. 1983)).

Secondary liability arises when "a relationship exists between parties that permits one to be held liable for the consequences of the other's actions." *Waverly City Dist. Bd. of Edn.*, 2008 WL 5423269 at *8. Relationships which that meet this standard include: wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant. *See*

*Reynolds*, 68 Ohio St. 3d at 16; *Yank*, 2003 WL 21500191 at *3.  Ohio courts have declined to find an implied contract of indemnity without a sufficient relationship between the party claiming indemnity and the alleged primarily liable party.  *See Reynolds*, 68 Ohio St. 3d at 16 (Ohio Supreme Court rejected a claim for indemnity based on the relationship between two doctors caring for a single patient where the physicians acted independently and had distinct duties).

In this case, Defendants have neither alleged, nor provided evidence of, an express agreement for indemnification with Mr. Zell.  Likewise, Defendants do not allege or offer evidence supporting the existence of an implied agreement for indemnification with Mr. Zell.  Defendants correctly state the legal requirement that an implied indemnification agreement, and thus vicarious liability, "can be found only when the parties possess a special relationship that gives rise to vicarious liability as a matter of law."  (Doc. 60 at 11-12, quoting *Carter v. Bernard,* 2006 WL 3849855, at *4 (Ohio Ct. App. 2006)).  And yet Defendants do not allege or offer any evidence of a "special relationship" comparable to those relationships Ohio courts have held create an implied indemnification agreement.  Moreover, none of the relationships listed in *Reynolds* that have been found to give rise to implied contracts of indemnity are present here.

Instead, Defendants simply conclude that because Mr. Zell participated as an attorney in the underlying litigation, "[i]f there is liability, it should be placed solely on the actions of Zell and not FBT."  (Doc. 60 at 12).  Defendants apparently believe – although their argument is not clearly articulated – that Mr. Zell's participation in the underlying action necessarily creates a sufficient relationship between themselves and Mr. Zell such that the parties impliedly agreed that Mr. Zell would be secondarily liable for Defendants' negligent acts.  Unfortunately, Defendants fail to provide any legal support for this proposition.  Moreover, this Court is unable

to find support in Ohio law for a per se rule that a co-counsel relationship creates an implied indemnification agreement as a matter of law.  While the Court does not foreclose the possibility that such a relationship *may* give rise to an implied indemnification agreement in certain circumstances, Defendants do not present adequate factual or legal support for such an argument in this case sufficient to withstand summary judgment.

The Court is unable to find that either an express or implied indemnification agreement exists between Mr. Zell and Defendants.  The conclusory allegations pled in Defendants' third-party complaint, and the lack of support for any such agreement in Defendants' Opposition to Mr. Zell's Motion for Summary Judgment are insufficient to discharge Defendants' burden on summary judgment.  Thus, the Court finds that Defendants have not demonstrated the presence of any genuine issues of material fact to sustain a claim for indemnification.  For this reason, Mr. Zell's Motion for Summary Judgment on Defendants' indemnification claim is **GRANTED**.

### IV.    CONCLUSION

For the reasons states above, Third-Party Defendant's Motion for Summary Judgment is **GRANTED**.  Mr. Zell is hereby dismissed from this action as a third-party defendant.

**IT IS SO ORDERED.**

    **  s/ Algenon L. Marbley        **
    **ALGENON L. MARBLEY**
    **UNITED STATES DISTRICT JUDGE**

**DATED:  December 23, 2014**